IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

ZACCHEUS OBIE

CRIMINAL ACTION FILE NO.

1:18-CR-424-MLB-JKL-1

## **ORDER AND FINAL REPORT AND RECOMMENDATION**

This is a criminal case.  The case is presently before the Court on the following pretrial motions filed by Defendant Zaccheus Obie:

- Preliminary Motion to Suppress Contents of his Cellular Telephone [Doc. 94], which he later particularized [Doc. 103];

- Preliminary Motion to Dismiss the Indictment [Doc. 98]; and

- Motion for Bill of Particulars [Doc. 99].

The government has responded to the motions [Docs. 104, 105, and 106], and the time for Obie to file reply briefs has passed [*see* Doc. 101].  For the following reasons, it is **RECOMMENDED** that the motion to suppress and motion to dismiss be **DENIED**, and it is **ORDERED** that the motion for a bill of particulars be **DENIED**.

## I.      SUMMARY OF SUPERSEDING INDICTMENT

The superseding (and operative) indictment in this case charges Obie with conspiracy to commit sex trafficking of a minor in violation of 18 U.S.C. § 1594(c), and two substantive counts of sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1).[1]  [Doc. 56 at 1-4.]  According to the indictment, in or around June 2017, two minors, A.G. and G.W., reached out to Q.O.[2] and asked for help getting jobs at strip clubs.  [*Id.* at 2.]  Q.O. told A.G. and G.W. that he knew someone who could "get them in the game," and he gave A.G. and G.W. Obie's telephone number.  Later that month, G.W. and A.G. contacted Obie.  Obie then directed N.M. to drive G.W. and A.G. to Atlanta to meet him.  [*Id.*]

The minors traveled to Atlanta and met Obie.  [Doc. 56 at 2.]  Afterwards, he allegedly "caused [them] to commit commercial sex acts by soliciting customers on local streets and through advertisements posted on Backpage.com, a classified advertisement website."  The Backpage.com advertisement for G.W. falsely stated that G.W. was 22 years old even though she was only 17 years old, which,

---

[1] The superseding indictment also charges Codefendant Kikia Anderson with conspiracy to commit sex trafficking (Count 1) and one substantive sex trafficking of a minor (Count 2).  This case has been certified ready for trial as to Anderson.

[2] "Q.O." appears to refer to Quintavious Obie, who was previously charged as a codefendant in this case.  [*Compare* Doc. 1, *with* Doc. 56.]

2

according to the indictment, Obie knew at the time the advertisement was posted. Also during June and July 2017, Obie allegedly used hotels involved in interstate commerce in the Atlanta area to cause G.W. and A.G. to engage in commercial sex acts, and he kept G.W.'s and A.G.'s earnings.  [*Id.*]  During that period, codefendant Anderson also allegedly rented the hotel rooms in which G.W. engaged in prostitution and transported G.W. to hotels to engage in commercial sex acts for Obie.  [*Id.* at 2-3.]

## II.   MOTION TO SUPPRESS EVIDENCE SEIZED FROM CELL PHONE

Obie moves to suppress evidence seized pursuant to a federal search warrant from a Samsung Galaxy S7 cellular telephone that was in his possession at the time of his arrest on July 24, 2017.  [Doc. 94, 103.]  He argues that the warrant to search the phone was not supported by probable cause and that it was unconstitutionally overbroad and not sufficiently particularized.  [Doc. 103.]  After discussing the pertinent background facts, I address each of these arguments in turn.

### A.   Summary of the Search Warrant and Application

On July 27, 2017, Homeland Security Investigations ("HSI") Special Agent Stuart Reagan applied for a search warrant for a Samsung Galaxy S7 cellular telephone, assigned telephone number 404-539-6256, that agents seized from Obie

3

at his arrest on July 24, 2017.  [Doc. 107 at 7-20.[3]]  In support of his application, SA Reagan provided an affidavit in which he summarized his relevant training, experience, and education.  (Reagan Aff. ¶¶ 2-5, 8-12.)

In support of probable cause, SA Reagan relayed that HSI and the FBI were investigating the sex trafficking of juveniles and adults by Obie.  (Reagan Aff. ¶ 15.)  He described a May 31, 2017 encounter between A.P. and Forest Park, Georgia, police at a truck stop in Forest Park, after police received a complaint of a suspicious person.  (*Id.* ¶ 16.)  Officers questioned A.P., who stated that she had been forced into prostitution in Georgia by an individual known as "Swayzi" (later identified by police as Quintavious Obie through his Instagram account), and that she was trying to leave Atlanta to "escap[e] that lifestyle."  (*Id.* ¶ 17.)  A.P. reported that she had worked for a pimp in Texas who "sold" her to Quintavious Obie.  (*Id.*)  Then, after one or two months, Quintavious Obie "sold [her] to another pimp in Atlanta named 'Z,'" and she had run away from "Z" that morning (May 31, 2017).  (*Id.* ¶ 18.)  A.P. told the officers that "Z" had provided a room for her at a hotel in College Park, Georgia.  Registration records that officers obtained from the hotel

_____

[3] SA Reagan's affidavit appears at page 8 of the document docketed at entry no. 107.  I refer to specific portions of SA Reagan's affidavit as "Reagan Aff." followed by paragraph.

indicated that Zaccheus Obie had rented the room.   A.P. also identified "Z's" Instagram account name as "pz_kinte" and his phone number as 404-539-6265. (*Id.*)

SA Reagan conducted records checks on Zaccheus Obie, which revealed that he was a registered sex offender currently on parole in Georgia for the offense of pimping a minor.  (Reagan Aff. ¶ 19.)  SA Reagan also located an advertisement for A.P. under the alias "Leah" on Backpage.com, "where she advertised sexual encounters in Atlanta and provided her telephone number for interested patrons." (*Id.* ¶ 20.)

SA Reagan next related that on June 12, 2017, he obtained a federal search warrant for a cellular telephone seized from A.P. when she was admitted into a drug treatment program.  (Reagan Aff. ¶ 21.)  The search revealed communications between A.P. and "Z" dated May 30, 2017, including:

- a text message from "Z" to A.P. in which "Z" stated "I'm going to make you famous";

- a text exchange where A.P. asked "Z" when "plays" would start calling her phone, to which "Z" responded it would be any moment[4]; and

- a text from "Z" stating that A.P. could "walk the street if she wanted to."[5]

 (*Id.*)

The search also revealed a series of text messages that A.P. received from "Z" on May 31, 2017, while police were interviewing her, in which "Z" asked her where she was and told her to gather her things and check out of the hotel. (*Id.*) When A.P. did not respond, "Z" wrote: "you shouldn't play with my pimping," and "this was your only chance—you don't get three chances with me like to do with swayzi." (*Id.*)

SA Reagan averred that on A.P.'s phone he also found email and social media accounts believed to be used by Obie, based on the content of the messaging. (Reagan Aff. ¶ 22.) SA Reagan described a message in which the user wrote that he had just been released from prison, which was consistent with Obie's release from the Georgia Department of Corrections in May 2017. SA Reagan also found

---

[4] According to SA Reagan, through his training and experience, he knows that the term "plays" refers to commercial sex customers. (Reagan Aff. ¶ 21.)

[5] According to SA Reagan, through his training and experience, he knows that the term "walk the street" refers to getting commercial sex customers by walking around on the street. (Reagan Aff. ¶ 21.)

6

"selfie" pictures of Obie on the device, which SA Reagan recognized to be Obie because he had viewed Obie's driver's license photograph on file with the Georgia Department of Driver's Services.  A.P. also told SA Reagan that "Z" had given her the phone to use.  For these reasons, SA Reagan believed that "Z" was Zaccheus Obie.  (*Id.*)

SA Reagan also related that on July 20, 2017, Commerce, Georgia, police responded to a runaway juvenile report.  (Reagan Aff. ¶ 23.)  The juvenile's mother reported to the police that her juvenile daughter, G.W., might be in the company of a man who used Instagram account "pz_kinte" and that her daughter referred to that man as "PD."  The mother also provided officers with a vehicle description, including license plate number, which came back registered to N.M.  The mother also reported to the police that her daughter had told her that "she was working in strip clubs and making money" and that "PD" was not letting her keep any of the money.  (*Id.*)

SA Reagan also stated that on July 23, 2017, Forest Park Police officers traveled to a residence in Forest Park to interview N.M.  (Reagan Aff. ¶ 24.)  When the officers arrived, they saw Obie park a Honda in the driveway and a woman (later identified as Kikia Johnson) exit the car and enter the residence.  (*Id.* ¶¶ 24,

28*.)*  Officers approached the car, made contact with Obie, and noticed a second female subject hiding under a blanket in the rear seat of the car.  (*Id.* ¶ 24.)  Upon questioning, they positively identified her as the missing juvenile, G.W.  (*Id.*)  The officers arrested Obie for a parole violation, contact with a minor, and seized the Samsung cell phone from him.  (*Id.* ¶ 25.)  According to SA Reagan, G.W. was uncooperative and refused to implicate Obie or N.M.; however, she did admit to having commercial sex encounters, which were arranged via Plenty of Fish.com, a dating website.[6]  (*Id.* ¶¶ 26-27.)  She also referred to the man in the car as "Z."  (*Id.* ¶ 26.)

SA Reagan related that detectives interviewed N.M., who identified herself as Obie's sister.  (Reagan Aff. ¶ 28.)  They also interviewed Johnson, who identified herself as Obie's girlfriend and admitted that she had traveled to Commerce to pick up G.W. at her residence.  Obie, by contrast, told the officers that he did not know G.W. and did not realize that she was in the car that day.  (*Id.*)

---

[6] SA Reagan explained that Plenty of Fish, which is based in Canada, is a dating website that allows users to meet people in their area based on profiles and arrange dates, and that he has seen prostitutes use the site to advertise for sex and human traffickers use the site to recruit women into prostitution.  (Reagan Aff. ¶ 27.)

According to SA Reagan, detectives obtained a state search warrant for G.W.'s cell phone out of concern that she was a victim of trafficking scheme. (Reagan Aff. ¶ 29.)  Pending a forensic search of the device, detectives located a contact named "PD" with the assigned telephone number 404-539-6265—the same as the number A.P. identified as "Z's" and the same as the number assigned to the device seized from Obie.  Detectives also located a text message on the phone where G.W. asked "PD" if she would be able to keep money she earned from "plays" she did when she turned 18 years old.  (*Id.*)

SA Reagan next described the type of information that may reside on a cell phone.  He stated that based on his knowledge, training, and experience, he knows that electronic devices can store information for long periods of time and that things viewed via the Internet are typically stored for some time.  (Reagan Aff. ¶ 33.)  In addition to data on the device that might constitute direct evidence of criminal activity, forensic examination may establish how the device was used, the purpose of its use, who used it, and when.  (*Id.* ¶ 35.)

On July 27, 2019, United States Magistrate Judge Catherine M. Salinas witnessed SA Reagan's application and issued the search warrant authorizing agents to search the Samsung cell phone seized from Obie during his arrest, finding

that SA Reagan's affidavit established probable cause to believe that the device

contained evidence criminal activity in violation of 18 U.S.C. § 1591, sex

trafficking. [Doc. 107.] Specifically, the warrant authorized agents to search for

and seize the following:

> 1. All records, data, and information, memory, electronically stored data and information on the wireless telephone, including all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including but not limited to:
>
> > a. any text messages, phone logs, voicemail or other audio messages, electronic mail messages, contact information, notepad documents, recordings of incoming calls, calendar information, and/or other documents reflecting communications that evidence human trafficking by Zaccheus OBIE, Quintavious OBIE, or known and as yet unidentified co-conspirators in the investigation;
> >
> > b. Any photographs, videos, images, or other recordings or electronic media depicting human trafficking, Zaccheus OBIE, Quintavious OBIE, or known and as yet unidentified co-conspirators in the investigation;
> >
> > c. lists of customers and related identifying information;
> >
> > d. types, amounts, and prices for sexual acts, and amounts of specific transactions;
> >
> > e. any information related to persons aiding and abetting Zaccheus OBIE or Quintavious OBIE (including names, addresses, phone numbers, or any other identifying information);

10

f.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2.  Evidence of user attribution showing who used or owned the [cell phone] at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

[Doc. 107 at 5-6.]

**B.      SA Reagan's Affidavit Established Probable Cause that Evidence of Sex Trafficking Was Contained on Obie's Cell Phone.**

I first address Obie's argument that SA Reagan's affidavit did not establish probable cause.  A judicial officer considering an application for a search warrant must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before her, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  "[T]he affidavit should establish a connection between the defendant and the [place] to be searched and a link between the [location] and any criminal activity."  *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002).

"[T]he task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the

11

record supporting the magistrate judge's decision to issue the warrant." *United States v. Bushay*, 859 F. Supp. 2d 1335, 1379 (N.D. Ga. 2012) (citing *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984)). As a result, "[c]ourts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994) (citing *Gates*, 462 U.S. at 236-37, and *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).

With these principles in mind, I readily conclude that Judge Salinas had a "substantial basis" for concluding that probable cause existed to believe that evidence of violations of 18 U.S.C. § 1591 would be found on the cell phone seized from Obie at his arrest. In his affidavit, SA Reagan relayed facts connecting the phone to Obie and suggesting that Obie likely used the phone in furtherance of sex trafficking. In particular, SA Reagan averred that the phone was in Obie's possession when he was arrested and provided corroborating evidence that law enforcement obtained from G.W.'s phone as well as A.P. about Obie's phone

number and linking Obie to the aliases "Z" and "PD."  It is also reasonable to conclude, as a matter of common sense, that the phone would likely contain evidence of sex trafficking, including trafficking of minors.  Notably, G.W.'s phone contained text messages with "PD"—which appears to be how G.W. referred to Obie—questioning whether she would be able to keep money she received from performing sexual encounters when she turned 18.  Likewise, a search of A.P.'s phone revealed numerous communications between Obie and A.P. regarding alleged pimping.  Even though it does not appear that A.P. was a minor at the time, A.P. indicated that she had been "sold" to Obie, and Obie's messages to A.P. expressly referred to "[his] pimping."

Obie's arguments to the contrary are not persuasive.  Obie argues that SA Reagan's affidavit did not demonstrate probable cause because SA Reagan referred to the Forest Park Police Department's investigation of A.P. and of her claim that she was had been forced into prostitution by Quintavious Obie, who is not charged in the superseding indictment  [Doc. 103 at 3.]  Obie also argues that SA Reagan's affidavit is deficient because he recites information relevant to an investigation of A.P.'s involvement with Obie, "a matter that is not related to the instant Indictment."  [*Id.* at 4.]  These arguments ignore the wealth of other information in

13

SA Reagan's affidavit indicating that Obie was involved in the sex trafficking of both A.P. and of a minor and that the phone seized from him during his arrest likely contained evidence of sex trafficking.   By no means did SA Reagan limit his discussion to facts surrounding an investigation relating to Quintavious Obie's conduct, as Obie seems to suggest.

Obie's argument that probable cause is lacking because SA Reagan referred to Obie's alleged involvement with A.P. misses the mark.   The investigation regarding A.P. is highly relevant to the probable cause finding because it provides further evidence identifying Obie as "Z" and linking the phone to Obie's suspected criminal activities.   But, even more fundamentally, the fact that Obie was not charged with respect to A.P. has no bearing on the determination of whether probable cause exists.   The issue before Judge Salinas in July 2017 when she considered the warrant application was whether there was probable cause to believe that the cell phone contained evidence of sex trafficking in violation of 18 U.S.C. § 1591, which makes it an offense to traffic anyone by means of force, fraud, or coercion, or to traffic minors.   At the time, it appeared that Obie was involved in trafficking at least one adult (A.P.) and one minor (G.W.) and that his phone contained evidence of that conduct.   It makes no difference to the probable cause

analysis that the government chose, over a year later, to prosecute Obie for sex trafficking of minors.

Obie also argues that the affidavit fails to establish probable cause because it "merely indicates that G.W. knew an individual named, 'pz_kinte,' a reference to Mr. Obie's Instagram moniker." [Doc. 103 at 4.]  Referring to the text message between G.W. and Obie, he additionally contends that G.W. merely "questioned her income that she made as a dancer at a strip club." [*Id.*]  I disagree. The fact that G.W. knew an individual who used the Instagram account "pz_kinte" is unquestionably relevant to probable cause because the affidavit establishes that "pz_kinte" is Obie, linking Obie to G.W.  Likewise, G.W. did not "question[] her income that she made as a dancer at a strip club," as Obie contends; rather, she asked could keep money for "plays,"—which SA Reagan explained was a reference to commercial sex customers—after she turned 18.  To be sure, the meaning of word "plays" may be subject to debate; however, as discussed above, SA Reagan stated that he knows from his training and experience that the term "plays" means commercial sex customers.  For purposes of reviewing a probable cause determination, this I have no hesitation in concluding that that it is reasonable to

assume, based on the totality of the circumstances, that G.W. used "plays" to refer to commercial sex customers.

For these reasons, then, I find a substantial basis exists to support Judge Salinas' decision to issue the warrant.

**C.    The Warrant Does Not Violate the Fourth Amendment's Particularity Requirement, But Even if It Did, the *Leon* Good Faith Exception to the Exclusionary Rule Applies.**

The Fourth Amendment requires that a search warrant particularly describe the places to be searched and the things to be seized.  U.S. Const. amend. IV.  The Fourth Amendment's particularity requirement prevents general searches and assures the individual whose property is searched and seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search. *Groh v. Ramirez*, 540 U.S. 551, 561 (2004).  A warrant which fails to sufficiently particularize the things to be seized is unconstitutionally overbroad, and evidence seized pursuant to such a warrant is subject to the exclusionary rule.  *United States v. Travers*, 233 F.3d 1327, 1329 (11th Cir. 2000).

In *United States v. Leon*, however, the Supreme Court recognized the good-faith exception to the exclusionary rule for searches conducted pursuant to warrants.  Observing that the purpose of the exclusionary rule is to deter unlawful police conduct, the Court found that this purpose would not be served, and the

16

exclusionary rule should not be applied, when an officer, acting with objective good faith, has obtained a search warrant from a judge and acted within its scope. *See Leon*, 468 U.S. 897, 920-21 (1984). Nonetheless, the *Leon* Court noted four situations in which the suppression of evidence would still be appropriate: (1) when the judicial officer issues the warrant on a deliberately or recklessly false affidavit; (2) when the judicial officer wholly abandons his judicial role; (3) when the warrant is issued on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) when the warrant is so facially deficient that an officer could not reasonably presume it to be valid. *Id.* at 923.

Here, Obie challenges the warrant on the grounds that it lacks the requisite particularity because it authorized agents to access "all records, date, and information, memory, electronically stored data and information on the wireless telephone." [Doc. 103 at 5.] He also argues that the "search warrant also fails to distinguish between the search for potential evidence on Mr. Obie's device, or whether the search includes evidence that is cloud based. Such a failure to specify the type of data constitutes a deficiency in the warrant." [*Id.* at 5-6.] Lastly, he argues that the "warrant's use of catch-all phrases, such as 'including, but not

limited to,' unnecessarily expands the search beyond what is reasonable." [*Id.*at 6.] In support, he cites *United States v. Fleet Management, Ltd.*, 521 F. Supp. 2d 436, 443-44 (E.D. Pa. 2007), for the proposition that a warrant authorizing seizure of "any and all data . . . including but not limited to" data about a ship's operations and crew from the ship's computer was held to be an invalid general warrant. [*Id.*]

As stated above, the warrant authorized agents to search the electronic data on the phone for "evidence of a crime, contraband fruits of crime, or items illegally possessed, and property designed for use, intended for use, or used in committing a crime, concerning violations of Title 18, United States Code, Section 1591." [Doc. 107 at 4.] Attachment A of the warrant more specifically describes the property to be seized as "[a]ll records, data, and information, memory, electronically stored data and information on the wireless telephone, ***including all of the foregoing items of evidence*** in whatever form and by whatever means they may have been created or stored." [*Id.* at 5 (emphasis added).] Although the warrant is not a model of clear drafting, I read the phrase "including all of the foregoing items of evidence" in Attachment A to refer to "evidence of a crime . . . concerning violations of [18 U.S.C. §] 1591," and, therefore, to limit the description of "all records" to records that constitute evidence of the crime of sex trafficking.

18

Moreover, courts apply the particularity clause with a "practical margin of flexibility." *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982). The particularity clause only requires a description to "enable[] the searcher to reasonably ascertain and identify the things authorized to be seized." *Id.* at 1348. Here, an officer executing the search warrant would no doubt believe that his or her seizure of information on the phone was limited to evidence of sex trafficking, particularly given the numerous examples in Attachment A specifically linking the types of data to be seized to the crime of human trafficking and, more specifically, sex trafficking. Thus, the warrant did not authorize a general seizure of all records on the phone but instead authorized the seizure of records related to the offense of sex trafficking.

The *Fleet Management* case Obie cites, where a warrant was determined to run afoul of the particularity requirement, is distinguishable. In *Fleet Management*, the government obtained a warrant for "any and all data" from a ship's computers, "including, but not limited to" data relevant to the ship's operations and crew, but—unlike here—that warrant did not limit the data to be seized to data constituting evidence of a crime. *See* 521 F. Supp. 2d at 439, 444-45.

Obie's argument that the warrant is not sufficiently particular because it does not differentiate between data stored on the phone and data stored in the cloud is of no moment. Obie cites no legal authority for his argument. That argument is also speculative because he does not suggest that any data was actually seized or could have been seized from the cloud rather than from the device itself. Additionally, the argument somewhat belies the practical realities of cell phone forensic analysis, which can be used to retrieve information downloaded to the device from the internet. [*See* Doc. 107 at 16-18 (discussing how information— including information downloaded from the internet—may be stored on electronic devices and how forensic techniques can assist in retrieving evidence).]

Even if the warrant did not satisfy the Fourth Amendment's particularity requirement, I conclude that the *Leon* good-faith exception to the exclusionary rule applies here. As noted above, the warrant could have been drafted more clearly, but a reasonable officer would read the description of property to be seized as limited to evidence of the crime of sex trafficking. Thus, the officer would not think he or she was executing a general warrant, and any defects in the description of the property to be seized are not so facially obvious that an officer could not reasonably presume it to be valid. *See Leon*, 468 U.S. at 923; *United States v. Blake*,

20

868 F.3d 960, 974-75 (11th Cir. 2017) (applying the *Leon* good-faith exception where a warrant for a defendant's social media account authorized the disclosure of "virtually every kind of data that could be found in a social media account" because the warrant was not so facially defendant that an officer could not have presumed it to be valid), *cert. denied*, 138 S. Ct. 753 (2018).  Furthermore, SA Reagan's warrant was presented with the assistance of an Assistant United States Attorney and was signed by a United States Magistrate Judge [Doc. 107 at 4], which would provide an "additional objective reason" for the officer executing the warrant to believe it was valid.  *See United States v. Allen*, 625 F.3d 830, 839 (5th Cir. 2010) (applying *Leon* good-faith exception to warrant that broadly authorized the seizure of property "designed or intended for use . . . as the means of committing a criminal offense or that contains evidence of the commission of a criminal offense," without incorporating by reference an attached list of items to be seized, based, in part, on the fact that the officer who obtained the warrant had it reviewed by colleagues, submitted it to prosecutors, and presented it to a magistrate judge).

In sum, I conclude that the search warrant did not run afoul of the particularity requirement, and even if it did, the *Leon* good-faith exception to the exclusionary rule applies.

For the foregoing reasons, then, it is **RECOMMENDED** that Obie's motion to suppress be **DENIED**.

## III.   MOTION TO DISMISS INDICTMENT

Obie moves to dismiss the superseding indictment on the grounds that (1) the indictment does not allege a nexus between his actions and interstate commerce; (2) two sections of the anti-sex trafficking statute, 18 U.S.C. § 1591(a)(1) and (a)(2), use undefined terms and are, therefore, unconstitutionally vague; and (3) § 1591 improperly relieves the government of its burden to show that the defendant knew the victim was under 18 years of age.  I address each of these arguments in turn.

### A.   The Superseding Indictment Sufficiently Alleges that Obie's Actions Were Committed in or Affected Interstate Commerce.

Obie argues first that the indictment fails to allege "a sufficient substantial Commerce Clause connection that would satisfy the federal nexus for a federal crime" in that "the Indictment fails to show that Mr. Obie participated in any activity that substantially impacted interstate commerce."  [Doc. 98 at 2 (citing *United States v. Lopez*, 514 U.S. 549 (1995).]  This argument is without merit.

Federal Rule of Criminal Procedure 12(b)(1) authorizes criminal defendants to "raise by pretrial motion any defense, objection, or request that the court can

determine without a trial on the merits."   "A motion is capable of pretrial determination 'if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity' of the motion." *United States v. Turner*, 842 F.3d 602, 604-05 (8th Cir. 2016) (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)).  Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires the indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ."  An indictment is legally sufficient if it "'(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.'" *United States v. Masino*, 869 F.3d 1301, 1306 (11th Cir. 2017) (quoting *United States v. Lang*, 732 F.3d 1246, 1247 (11th Cir. 2013)).  "It is well established in this Circuit that an indictment is sufficient if it tracks the language of the statute and provides a statement of facts that gives notice of the offense to the accused." *United States v. McNair*, 605 F.3d 1152, 1186 (11th Cir. 2010).  On a motion to dismiss, the Court is limited "to reviewing the face of the indictment and, more specifically, the language used to charge the crimes"; the Court "may not dismiss

23

an indictment . . . on a determination of facts that should have been developed at trial." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (alteration in original) (quotations omitted). Along these lines, "[t]here is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992).

As relevant here, "[u]nder § 1591(a)(1), the government first must show that the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained a person by any means." *United States v. Rivera*, 558 F. App'x 971, 974 (11th Cir. 2014) (citing 18 U.S.C. § 1591(a)(1)). "The government then must prove one of two alternatives: that the defendant knew or was in reckless disregard of the fact that (1) the person was under the age of 18 and would be made to engage in a commercial sex act, *or* (2) means of force, threats of force, fraud, or coercion would be used to cause the person to engage in a commercial sex act." *Id*. "Lastly, the government must prove that the defendant's acts were in or affected interstate or foreign commerce." *Id*.

Here, the grand jury has found probable cause to believe that Obie engaged in sex trafficking of two minors "in and affecting interstate commerce"—

24

essentially tracking the language of § 1591(a). [Doc. 56 at 1-3.] Pretrial determination of the sufficiency of that allegation is beyond the scope of a motion to dismiss under Federal Rule of Criminal Procedure 12(b). *See United States v. Bragg*, No. CR412-158, 2013 WL 5780400, at *1 (S.D. Ga. Oct. 25, 2013) (holding that allegation in indictment that defendant enticed minor female to engage in prostitution for his financial gain "in and affecting interstate commerce" was sufficient to withstand motion to dismiss); *see also United States v. Williams*, No. 12-60116-CR-RNS, 2012 WL 3242043, at *2 (S.D. Fla. Aug. 7, 2012) (same).

Obie's argument fails for the additional reason that the superseding indictment does allege facts that Obie's actions were in or affecting interstate commerce. The Eleventh Circuit held that "intrastate sex trafficking of minors inherently affects interstate commerce." *United States v. Weise*, 606 F. App'x 981, 985 (11th Cir. 2015) (citing *United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir. 2007)). In addition, the superseding indictment alleges, among other things, that Obie caused the victims to use a website, Backpage.com, to advertise commercial sex acts and that he "used hotels involved in interstate commerce" to cause the victims to engage in commercial sex acts. [Doc. 56 at 2.] Using the internet and hotels to facilitate sex trafficking of minors qualifies as conduct "in commerce,"

and, therefore," "necessarily affected commerce as well." *United States v. Batson*, 818 F.3d 651, 664-65 (11th Cir. 2016) (holding that defendant's "use of phones, the Internet, hotels, and buses facilitated his trafficking of [the minor victim], so his conduct was 'in commerce'" under § 1591(a)(1)).[7]

### B.   Obie's Void-For-Vagueness Challenge Does Not Warrant Dismissal.

Obie challenges two subsections of § 1591 as unconstitutionally vague. First, he argues that § 1591(a)(2), which prohibits "'benefitting, financially or by receiving anything of value,'" is "unconstitutionally vague because [the statute] fails to identify whether the act of engaging in a sexual encounter or the act of receiving payments constitutes 'anything of value.'"   [Doc. 98 at 2.]   He additionally argues that the term "value" is subjective and undefined. [*Id*.]  I need not dwell on the merits of those arguments because Obie is not charged with violating subsection (a)(2) of the statute.  He is instead charged with violating only subsection (a)(1).  Since Obie challenges a statutory provision with which he is not

---

[7] As the government correctly points out, Obie's reliance on *United States v. Lopez*, 514 U.S. 549 (1995), is misplaced. [*See* Doc. 105 at 11.] *Lopez* addressed whether Congress exceeded its authority under the Commerce Clause in enacting the Gun-Free School Zones Act of 1990.  In the case at bar, by contrast, Obie does not challenge the constitutionality of § 1591(a)(1).  Rather, he challenges the sufficiency of the indictment.

charged, his challenge is irrelevant and provides no basis for dismissing the indictment.

Second, Obie argues that § 1591(a)(1) is unconstitutionally vague because the term "force," which appears in the statute, is not defined and "thereby provides insufficient notice regarding prohibited conduct." [Doc. 98 at 2.] The government responds that Obie's void-for-vagueness challenge is premature and that he may not raise the issue until the close of evidence at trial. [Doc. 105 at 13-16.] The government has the better of the arguments.

"Void-for-vagueness challenges, absent a First Amendment claim, are evaluated as applied to the facts of each case." *United States v. Wetherald*, 636 F.3d 1315, 1326 (11th Cir. 2011) (citing *United States v. Fisher*, 289 F.3d 1329, 1333 (11th Cir. 2002)); *see also United States v. Jernigan*, No. 1:14-cr-24-AT-JFK, 2015 WL 1781747, at *2 (N.D. Ga. Apr. 10, 2015), *adopted, id.* at *1.[8] Vagueness,

---

[8] To the extent that Obie makes a facial challenge to § 1591(a)(1), such a challenge fails. When a party makes a facial challenge to a law, he or she "bears the burden of proving that the law could never be applied in a constitutional manner." *Am. Fed'n of State, Cty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir. 2013) (quoting *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1262 (11th Cir. 2007)). In other words, "the challenger must establish that no set of circumstances exists under which the Act would be valid." *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Here, Obie has not

the Eleventh Circuit has explained, "is an outgrowth of the Fifth Amendment's Due Process Clause. It encompasses notions of fair warning such that people of common intellect may understand a statute's prohibitions and need not guess at its meaning." *United States v. Wayerski*, 624 F.3d 1342, 1347 (11th Cir. 2010) (citations omitted). "A criminal statute will violate due process if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or it authorizes or even encourages arbitrary and discriminatory enforcement." *Id.* (citations and quotation marks omitted). Thus, the issue before the Court is whether the language of § 1591(a)(1) gave Obie "fair notice" that his conduct was criminal. *United States v. Whyte*, 928 F.3d 1317, 1331 (11th Cir. 2019).

To resolve this void-for-vagueness challenge at this stage of the proceedings, the Court would have to either make fact findings relating to the charged conduct now (prior to trial), or, alternatively, employ some sort of procedural mechanism similar to summary judgment, where the Court would view the facts in the light most favorable to one of the parties. The Court is not authorized to do either of

---

cited any case that has upheld a facial challenge to § 1591(a)(1) on the grounds that the term "force" is unconstitutionally vague.

those things.   As just discussed with respect to Obie's interstate commerce argument, this Court may not dismiss an indictment based on a determination of facts that should be developed at trial, and "[t]here is no summary judgment procedure in criminal cases." *Critzer*, 951 F.2d at 307.   Accordingly, the procedurally proper approach is for Obie to raise his vagueness challenge after the close of the government's case on a Rule 29 motion for judgment of acquittal. *See United States v. Graves*, No. 1:13-CR-417-WSD-JSA, 2014 WL 2589428, at *10 (N.D. Ga. June 9, 2014), *adopted*, *id*. at *5 (deferring as-applied challenge to federal anti-kidnapping statute until after close of government's case-in-chief and "full resolution of the facts").   For these reasons, it would be premature to entertain an as-applied vagueness challenge to § 1591(a)(1) before trial, and, thus, I recommend that Obie's motion to dismiss be denied without prejudice to renew the challenge following the presentation of the government's evidence at trial.

### C.   Section 1591(c) Does Not Impermissibly Relieve the Government of its Burden of Proof.

Last, Obie argues that § 1591 is unconstitutional because it improperly relieves the Government of its requirement to prove that the defendant knew (or recklessly disregarded) that the victim was under 18. [Doc. 98 at 3.] Obie explains: "Section 1591(c) specifically provides that the Government 'need not prove that

the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years" in prosecutions of sex trafficking of minors as outlined in subsection (a)(1) when the Government deems the accused had an 'opportunity to observe the person so recruited.'" [*Id.* (quoting 18 U.S.C. § 1591(c).]

Binding Eleventh Circuit precedent forecloses this argument. In *Whyte*, the Court held that the government may prove sex trafficking of a minor by establishing only that the defendant had a reasonable opportunity to observe the minor victim instead of proving that he knew or recklessly disregarded the victim's age. 928 F.3d at 1328. The Court went on to explain that subsection (c) does not impermissibly impose strict liability on a defendant by removing a *mens rea* requirement as to the victim's age because the statute retains its "traditional scienter requirement of knowledge that the victim will be caused to engage in a commercial sex act." *Id.* at 1330-31 (quotation marks omitted). In other words, the government still must prove the defendant's mental state to commit the trafficking offense. Its burden is only relieved as to the defendant's knowledge of the victim's age, when the government has proven that the defendant had a reasonable opportunity to observe the victim. Furthermore, the government does not "deem" the defendant to have had a reasonable opportunity to observe the victim, as Obie argues. The

30

government must prove at trial that the defendant had a reasonable opportunity to observe the victim.  *Id.* at 1328.

For these reasons, it is **RECOMMENDED** that Obie's motion to dismiss be **DENIED**.

## IV.    MOTION FOR BILL OF PARTICULARS

Federal Rule of Criminal Procedure 7(f) authorizes the Court to direct the government to file a bill of particulars.  "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense."  *United States v. Davis*, 854 F.3d 1276, 1293 (11th Cir.) (quotation omitted), *cert. denied*, 138 S. Ct. 379 (2017).  General discovery is not a valid reason for seeking a bill of particulars, *United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981), nor is it "'designed to compel the government to [provide a] detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial,'" *United States v. Roberts*, 174 F. App'x 475, 477 (11th Cir. 2006) (quoting *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980)).  Further, "the defendant [is not] entitled to a bill of particulars with respect to information which is already available through other sources such as the indictment or discovery and

31

inspection." *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir.), *modified on other grounds by*, 801 F.2d 378 (11th Cir. 1986). "The defendant bears the burden of showing that the information requested is necessary and that he will be prejudiced without it so as to justify granting a bill of particulars," and as a result, the "mere statement that the defendant will be prejudiced . . . is insufficient." *United States v. Reddy*, No. 1:09-CR-0483-ODE-AJB, 2010 WL 3210842, at *5 (N.D. Ga. Apr. 5, 2010) (citing *United States v. Barnes*, 158 F.3d 662, 666 (2d Cir. 1998)), *report and recommendation adopted in relevant part*, 2010 WL 3211029 (N.D. Ga. Aug. 11, 2010); *see also United States v. Blitch*, No. 5:08-CR-40(HL), 2009 WL 973359, at *5 (M.D. Ga. Apr. 9, 2009) (citing *United States v. Thevis*, 474 F. Supp. 117, 124 (N.D. Ga. 1979)). The grant or denial of a bill of particulars rests within the sound discretion of the trial court. *United States v. Draine*, 811 F.2d 1419, 1421 (11th Cir. 1987); *Colson*, 662 F.2d at 1391.

Obie requests that the government "state with specificity":

(1) "what Mr. Obie's knowledge, participation and role was in the conspiracy regarding 'force, threats of force, fraud, and coercion, and any combination of such means, . . . used to cause G.W. to engage in a commercial sex act'"

(2) "what acts of 'force, threats of force, fraud, coercion, and any combination of such means, . . . used to cause G.W. to engage in a commercial sex act' were implemented or used by Mr. Obie"; and

(3) "what acts of 'force, threats of force, fraud, and coercion, and any combination of such means, . . . used to cause A.G. to engage in a commercial sex act' were implemented or used by Mr. Obie."

[Doc. 99 at 2.]

The government responds that it has disclosed the following information to Obie's counsel, which contains information about the charges in this case:

- Reports of Investigation by the FBI, HSI, Forest Park Police Department, and Commerce Police Department;

- Search warrants;

- Obie's criminal history, certified convictions, and police reports for the incidents that led to the convictions, which constitute early disclosures of potential 404b evidence;

- Obie's jail calls;

- Obie's Instagram account and Facebook account, which contain messaging and posts on the topic of pimping;

- Cell site geo-location data from Obie's cell phone number;

- A copy of the cell phone dumps from three victims, which contain messaging to and from Obie regarding commercial sex acts and to and from customers of commercial sex acts;

- Reports summarizing the victims' statements as to what Obie did to cause them to engage in commercial sex;

- Toll records from two victims' phone numbers; and

- Records from four hotels showing that Obie and co-defendant Kikia Anderson rented rooms from which the victims engaged in commercial sex acts.

[Doc. 104 at 2.] The government further states that the superseding indictment presents the essential elements of the charged offenses in that it lists the relevant dates, specifies the district in which the conduct occurred, identifies the victims of the alleged sex trafficking, and specifies overt acts. [*Id.* at 5.] The government maintains that Obie's requests are not within the proper scope of a bill of particulars, as he "essentially requests the Court to compel the government to lay out its theory of the case and to describe how the government intends to prove its case at trial." [*Id.* at 6.]

I am satisfied that Obie has sufficient information—by way of the superseding indictment and the discovery—to understand the government's theory of the case against him, to prepare his defenses, minimize surprise at trial, and enable him to plead double jeopardy if later prosecuted for the same offense. Obie's first request—which asks about Obie's knowledge, participation, and role in the alleged conspiracy charged in Count 1—is not within the proper scope of a

34

bill of particulars.  *See United States v. Persico*, 621 F. Supp. 842, 868 (S.D.N.Y. 1985) (denying defendants' request for bill of particulars as to how they performed acts in furtherance of alleged conspiracy).  But, in any event, the superseding indictment provides detail concerning his role in the alleged conspiracy, and I have no doubt that the discovery produced by the government contains even more information.  The other two requests are likewise unsuitable for a bill of particulars as they essentially seek to compel the government to provide an explication of its evidence and theory of the case, which falls outside the scope of a proper bill of particulars.  *See United States v. Robinson*, No. 1:14-cr-176-RWS, 2014 WL 6667018, at *8 (N.D. Ga. Nov. 24, 2014) (denying motion for bill of particulars seeking explanation of how defendant used "force, threats of force, coercion, and fraud to induce alleged acts of prostitution," reasoning that the government is entitled to allege multiple means of committing an offense and that details concerning how the government believed he did so was "tantamount to a demand for the [g]overnment's evidence"); *see also United States v. Black*, No. 1:15CR9-MW/GRJ, 2015 WL 13427809, at *1 (N.D. Fla. Oct. 16, 2015) (denying motion for bill of particulars in which defendant requested the government to specify which of the types of actions proscribed by § 1591(a)(1) in which defendant allegedly

35

engaged); *United States v. Lilley*, No. 2:13-CR-20290-JTF-dkv, 2015 WL 4758982, at *2-4 (W.D. Tenn. Aug. 12, 2015) (same).

For these reasons, then, Obie's motion for a bill of particulars is **DENIED**.

## V.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Obie's Motion to Suppress Contents of his Cellular Telephone [Docs. 94 and 103] and his Preliminary Motion to Dismiss the Indictment [Doc. 98] be **DENIED**.  It is also **ORDERED** that Obie's Motion for Bill of Particulars [Doc. 99] be **DENIED**.

I have now addressed all referred pretrial matters relating to Defendant Obie and have not been advised of any impediments to the scheduling of a trial. Accordingly, this case is **CERTIFIED READY FOR TRIAL** as to this defendant.

IT IS SO ORDERED AND RECOMMENDED this 6th day of November 2019.

_____
JOHN K. LARKINS III
United States Magistrate Judge